UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                    Case No. 07-20369
                                                      Honorable Victoria A. Roberts

ROGER SWEET,

     Defendant.

_____/

## AMENDED ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [ECF No. 28]

## I.   INTRODUCTION

This matter is before the Court on Roger Sweet's ("Sweet") motion for compassionate release. [ECF No. 28]. Sweet asks the Court to grant him compassionate release due to his age (73), medical conditions (chronic kidney disease, history of smoking, and prior COVID-19 case which resulted in atrial fibrillation), and the COVID-19 pandemic.

The Court **GRANTS** Sweet's motion for compassionate release.

## II.   BACKGROUND

In 2008, Sweet pled guilty to several charges in Michigan state and federal courts. In Oakland County, the Court sentenced Sweet to 15-30 years on a charge of homicide-murder, 2nd Degree for causing the death of

his first wife. A Wayne County judge sentenced Sweet to 10-17 years for criminal sexual conduct, 1st degree. Finally – before this Court – Sweet pled guilty to four counts of Sexual Exploitation of Children in violation of 18 U.S.C. § 2251(a) and one count of Attempted Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2). This Court gave Sweet concurrent sentences of 262 months on Counts 1-4 and 240 months on Count 5. On February 8, 2021, the Court amended Sweet's sentence to run concurrently with the sentences imposed in Wayne and Oakland County Circuit Courts

Sweet began serving his state sentence on January 11, 2007. For sentencing purposes, this is the date his federal sentence began as well. Sweet paroled into federal custody from the Michigan Department of Corrections on May 15, 2019. Sweet is housed at Federal Correctional Institution (FCI) Milan with a release date of December 22, 2037.

Sweet filed a *pro se* motion for compassionate release; his counsel filed a supplemental brief on February 16, 2021. The government opposes Sweet's release.

## III.   DISCUSSION

The compassionate release statute allows the Court to modify a defendant's term of imprisonment if: (1) he fully exhausts all administrative remedies; (2) he shows that both "extraordinary and compelling reasons

2

warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; (3) and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release, to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A.    Sweet Exhausted Administrative Remedies

The Warden denied Sweet's request for relief on January 15, 2021. Sweet satisfies the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A).

### B.    Extraordinary and Compelling Reasons Exists

District courts in this circuit are no longer confined to the considerations outlined in § 1B1.13's policy commentary when determining if a defendant's request is extraordinary and compelling. *Jones* suggests that an inmate may have an extraordinary and compelling reason for release where he suffers from a medical condition identified as a risk factor for COVID-19. *See Jones*, 980 F.3d at 1102; *United States of America v.*

*Bibbs*, No. 12-20332-03, 2021 WL 1165604, at *2 (E.D. Mich. Mar. 26, 2021).

Sweet says he demonstrates extraordinary and compelling reasons. He cites to his age and medical conditions which place him at a higher risk to develop a severe illness from COVID-19. Sweet's pre-conditions include chronic kidney disease and a history of smoking. Additionally, in December 2020, Sweet contracted COVID-19 and was hospitalized after experiencing hypoxia (oxygen deprivation) and respiratory failure. As a result, Sweet was diagnosed with atrial fibrillation defined by the American Heart Association as "a quivering or irregular heartbeat (arrhythmia) that can lead to blood clots, stroke, heart failure and other heart-related complications." *See*, https://www.heart.org/en/health-topics/atrial-fibrillation/what-is-atrialfibrillation-afib-or-af. Recently, Sweet received the Moderna vaccine, but he maintains he is still at increased risk because the possibility of contracting COVID-19 a second time is not extinguished.

The government says it typically would concede that an inmate with Sweet's medical conditions satisfies the extraordinary and compelling prong, but they oppose here for two reasons: (1) Sweet tested positive and recovered from COVID-19; and (2) Sweet received the Moderna vaccine

for COVID-19 on January 28, 2021. Accordingly, it contends, the chances that Sweet will contract the virus again are remote.

Two factors undoubtedly place Sweet at increased risk of severe illness or death from COVID-19: his age and chronic kidney disease.

### 1. Age

Sweet is 73 years of age. Throughout the spring of 2020, the Centers for Disease Control and Prevention (CDC) advised that "[p]eople aged 65 years and older" may be at higher risk for severe illness from COVID-19. *People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention (Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html. The CDC has since revised its guidance and now concludes that "the risk for severe illness with COVID-19 increases with age, with older adults at highest risk." *Id*. Under any metric, Sweet's age qualifies. Multiple courts in this circuit agree that a defendant Sweet's age is at increased risk. *See e.g. United States v. Moore, No. 06-20465, 2020 WL 6440920*, at *2 (E.D. Mich. Nov. 3, 2020). Sweet's advanced age is one factor which places him at increased risk of severe illness of death from COVID-19.

## 2.  Chronic Kidney Disease

Additionally, Sweet's medical records indicate that he suffers from chronic kidney disease. On June 25, 2020, the CDC added chronic kidney disease ("CKD") to the list of conditions that create an "increased risk" of severe illness from COVID. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Although there may be discrepancy regarding the stage of Sweet's kidney disease, the CDC clearly explains "[h]aving chronic kidney disease of any stage can make you more likely to get severely ill from COVID-19." *Id.* This condition also places Sweet at increased risk of severe illness or death from COVID-19.

## 3.  COVID-19 Vaccine and Previous Positive Test

Although the Court agrees with the government that recovering from COVID-19 and being fully vaccinated decreases one's likelihood of severe COVID symptoms, recent data reveals that the threat of severe illness or death from COVID-19, while diminished, is nevertheless real. An Illinois district court expressed skepticism at the government's reinfection argument and described relevant scientific findings as follows:

> [T]he World Health Organization (WHO) issued a scientific brief saying that the public belief that a one-time infection leads to immunity remains unproven and is unreliable as a basis for response to the pandemic. *See* WHO, "Immunity

6

> Passports" in the Context of COVID-19,
> https://www.who.int/newsroom/commentaries/detail/immunity-
> passports-in-the-context-of-covid-19 (last accessed June 22,
> 2020). Specifically, the WHO says that "[t]here is currently no
> evidence that people who have recovered from COVID-19 and
> have antibodies are protected from a second infection." *Id*.
> The risk of reinfection is not merely theoretical.

*United States v. Budd*, 2021 U.S. Dist. LEXIS 12650, *5-6 (citing

*United States v. Common*, No. 17-CR-30067, 2020 U.S. Dist. LEXIS

108555, 2020 WL 3412233, at *4 (C.D. Ill. June 22, 2020)). Sweet also

produced a series of BOP press releases in which an inmate tested

positive for COVID-19 twice. In one instance, the inmate died. *See* BOP

Press Release, *Inmate Death at FCI Butner (Low)* (Sept. 17, 2020). More

broadly, 246 fully vaccinated Michiganders contracted COVID-19 between

January 2021 and March 2021.

https://www.freep.com/story/news/local/michigan/2021/04/06/vaccinated-

covid-19-contract-virus-coronavirus/7101678002/. Of that group, three died.

*Id*.

The likelihood of reinfection for Sweet may be even higher than for

someone not incarcerated because of the congregate prison setting. The

frequent large-scale movements of inmates around prison facilities create

ideal conditions for the disease's spread. *United States v. Geiser*, No. 1:08-

CR-280, 2020 WL 6361919, at *2 (N.D. Ohio Oct. 29, 2020); *see also*

*United States v. Park, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020)* ("The

nature of prisons—crowded, with shared sleeping spaces and common

areas, and often with limited access to medical assistance and hygienic

products—put those incarcerated inside a facility with an outbreak at

heightened risk.")

Sweet's advanced age and underlying health conditions constitute

extraordinary and compelling reasons to modify his sentence under 18

U.S.C. § 3582(c)(1)(A)(I). Sweet's development of atrial fibrillation after

contracting COVID the first time only reinforces the Court's concerns of the

potentially severe consequences if Sweet contracted COVID-19 again.

## C. The § 3553(a) Sentencing Factors Favor Release

Because Sweet exhausted his administrative remedies and his

medical conditions and age constitute extraordinary and compelling

reasons for compassionate release, the only issue before the Court is

whether the § 3553(a) factors weigh against granting release. *See United

States v. Kincaid*, 802 Fed. Appx. 187, 188 (6th Cir. 2020).  They do not.

Sweet admits that his underlying crimes are extremely serious but

says he has been a model inmate. To date, he has incurred no disciplinary

infractions while in custody which Sweet says, demonstrates that he can

comply with strict rules. Sweet also argues fourteen years in custody satisfies the purposes of sentencing.

The government says the nature and circumstances of Sweet's crimes – raping and sexually assaulting a special needs child – are shocking and counsel against his release. It says Sweet's history and characteristics weigh in favor of continued confinement. Sweet pled guilty to murdering his first wife and police found his second wife's body less than one mile from his residence -- although he was never charged in her death. Finally, it adds, releasing Sweet now would cause unwarranted sentencing disparities among like offenders and would not reflect the seriousness of the offense.

Sweet's actions were abhorrent. Nobody, including Sweet, underestimates the seriousness of his crimes; the details are contained in the presentence report and need not be fully repeated here. Accordingly, the nature and circumstances of the underlying offense weigh heavily against Sweet. However, the Court's inquiry does not stop at evaluating the actions which underpin Sweet's sentence. The Court must evaluate the remaining § 3553(a) factors including whether Sweet remains a dangerous to society. Without a single disciplinary action in fourteen years of incarceration, Sweet's behavior demonstrates a respect for the law and

indicates how he may perform on supervised release. *See United States v. Fields*, No. 12-cr-20274, ECF No. 50 (E.D. Mich. Dec. 8, 2020). Additionally, Sweet is now 73 years old which could reduce the likelihood that he will recidivate. *See* Office of the Inspector Gen., U.S. Dep't of Justice, *The Impact of An Aging Inmate Population on the Federal Bureau of Prisons* 40 (2016).

Sweet's release will not create unwarranted sentencing disparities. To date, Sweet has served over 168 months in custody. This amounts to 64% of his 262-month sentence. A number of courts have released inmates in similar circumstances. *See United States v. Budd*, 2021 U.S. Dist. LEXIS 12650, *10 (releasing a 49 year old inmate with chronic kidney disease who pled guilty to possession and distribution of child pornography after serving 14 years); *see also United States v. Pippin, No. CR16-0266-JCC,* 2020 WL 2602140, at *4 (W.D. Wash. May 20, 2020) (releasing a 50 year old inmate who pled guilty to possessing child pornography and sent pictures of his genitals to a 12 year old girl after serving 70% of his sentence); *see United States v. Geiser*, No. 1:08-CR-280, 2020 WL 6361919, at *2 (N.D. Ohio Oct. 29, 2020) (releasing a 61 year old inmate who pled guilty to using a computer to receive and distribute child pornography served 15 years and recovered from COVID).

The Court concludes that a sentence of time served and five years of supervised release after fourteen years in custody, is a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.18 U.S.C. § 3553(a).

## IV.    CONCLUSION and RELIEF

The Court **GRANTS** Sweet's motion for compassionate release [ECF No. 28].

Under 18 U.S.C. § 3582(c)(1), the Court "may reduce [Sweet's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A).

The Court **REDUCES** Sweet's term of imprisonment to **TIME SERVED**.

Defendant is released on the following conditions – these conditions of supervised release become effective immediately upon release from the BOP:

- You will be monitored by a form of location monitoring technology at the discretion of the probation officer for a period of 12 months and you must abide by all technology requirements. The participant must pay all or part of the costs of participation in the location monitoring

11

program as directed by the court or probation officer. The form of location monitoring technology must be used to monitor court-imposed conditions of release.

- Home Detention: You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligation; or other activities as pre-approved by the probation officer.

- You must successfully complete any sex offender diagnostic evaluations, treatment or counseling programs as directed by the probation officer. Reports pertaining to sex offender assessments and treatment must be provided to the probation officer. Based on your ability to pay, you must pay the cost of diagnostic evaluations, treatment or counseling programs in an amount determined by the probation officer.

- You must not have direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, including your own children,

without the permission of  the probation officer, you must report this contact to the probation officer within 24 hours.  Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

- You must participate in the Computer/Internet Monitoring Program (CIMP) administered by the United States Probation Department. You must abide by the Computer/Internet Monitoring Program Participant Agreement in effect at the time of supervision and comply with any amendments to the program during the term of supervision. Due to the advances in technology the Court will adopt the amendments to the Computer/Internet Monitoring Program as necessary. For the purposes of accounting for all computers, hardware, software and accessories, you must submit your person, residence, computer and/or vehicle to a search conducted by the U.S. Probation Department at a reasonable time and manner. You must inform any other residents that the premises may be subject to a search pursuant to this condition. You must provide the probation officer with access to any requested financial information including billing records (telephone, cable, internet, satellite, etc.)

- You must submit your person, residence, office, vehicle(s), papers, business or place of employment, and any property under your control to a search.  Such a search must be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner based upon a reasonable suspicion of contraband or evidence of a violation of a condition of release.  Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

- You must reside in a Residential Reentry Center (RRC) for up to 180 days to establish appropriate income and housing. You must follow the rules and regulations of the center. Subsistence is waived.

- You must not have contact, directly or indirectly, with any victim or witness in this offense, unless approved by the probation officer.

- You must notify anyone you date or marry with a minor child under the age of eighteen (18) of your conviction.

- You must not purchase, sell, view, or possess images, in any form of media or live venue that depict pornography, sexually explicit conduct, child erotica, or child nudity.  You must not patronize any place where such material or entertainment is available.

- You must have employment pre-approved by the Probation Department. You must not be employed at or participate in any volunteer activities that involve contact with minors under the age of eighteen (18) or adults with disabilities, without prior approval from the probation officer.

- You must have all residences pre-approved by the Probation Department. You must not provide care or live in a residence where children under the age of eighteen (18) or adults with disabilities also reside, without prior approval of the probation officer.

- You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure compliance with the requirements of supervision or treatment. No violation proceedings will arise solely on the results of a polygraph examination. Based on your ability to pay, you must pay the cost of the polygraph examination in an amount determined by the probation officer.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  April 15, 2021

15